## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINCOLN HERBERT, | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | CIVIL ACTION NO. 02-2671 |
| ROBERT J. REINSTEIN, WILLIAM T. BERGMAN, THE BEASLEY SCHOOL OF LAW AND TEMPLE UNIVERSITY, | : | |
| Defendants. | : | |

## ENTRY OF APPEARANCE

Kindly enter our appearance on behalf of Defendants, Robert J. Reinstein, Dean of the James E. Beasley School of Law and a Vice President of Temple University; William T. Bergman, a Vice President of Temple University; the James E. Beasley School of Law; and Temple University - Of The Commonwealth System of Higher Education, in this matter.

Respectfully submitted,

Dated: November 14, 2005

John B. Langel
Lucretia C. Clemons
Identification Nos.: 20714 and 83988
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500

Attorneys for Defendants
Robert J. Reinstein, William T. Bergman, The Beasley
School Of Law and Temple University

## CERTIFICATE OF SERVICE

I, Lucretia C. Clemons, hereby certify that on this date I served a copy of the

foregoing Entry of Appearance via first-class mail, postage prepaid, upon the following:

Lincoln Herbert
83 South Lansdowne Avenue
No. C-7
Lansdowne, PA 19050

Dated: November 14, 2005

Lucretia C. Clemons

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LINCOLN HERBERT,

        Plaintiff,

        v.

ROBERT J. REINSTEIN, WILLIAM T.
BERGMAN, THE BEASLEY SCHOOL OF
LAW AND TEMPLE UNIVERSITY,

        Defendants.

CIVIL ACTION NO. 02-2671

## DEFENDANTS' MOTION TO DISMISS
## FOR LACK OF PROSECUTION

Defendants, Robert J. Reinstein, Dean of the James E. Beasley School of Law and

a Vice President of Temple University; William T. Bergman, a Vice President of Temple

University; the James E. Beasley School of Law; and Temple University - Of The

Commonwealth System of Higher Education (collectively, "Defendants"), by and through their

undersigned counsel, hereby request that the Court grant their Motion to Dismiss for Lack of

Prosecution.  In support thereof, Defendants submit the attached Memorandum of Law.

Respectfully submitted,

Dated: November 14, 2005

John B. Langel
Lucretia C. Clemons
Identification Nos.: 20714 and 83988
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500

Attorneys for Defendants
Robert J. Reinstein, William T. Bergman, The Beasley
School Of Law and Temple University

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| LINCOLN HERBERT, | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | CIVIL ACTION NO. 02-2671 |
| ROBERT J. REINSTEIN, WILLIAM T. BERGMAN, THE BEASLEY SCHOOL OF LAW AND TEMPLE UNIVERSITY, | : | |
| Defendants. | : | |

## <u>ORDER</u>

AND NOW, this ___ day of _____, 2005, upon consideration of Defendants' Motion To Dismiss For Lack Of Prosecution and Plaintiff's response in opposition thereto, if any, it is hereby ORDERED that Defendants' motion is GRANTED and that JUDGMENT IS ENTERED in favor of Defendants and against Plaintiff.

BY THE COURT:

_____
                                   J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| LINCOLN HERBERT, | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | CIVIL ACTION NO. 02-2671 |
| ROBERT J. REINSTEIN, WILLIAM T. BERGMAN, THE BEASLEY SCHOOL OF LAW AND TEMPLE UNIVERSITY, | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
<u>FOR LACK OF PROSECUTION</u>**

Defendants, Robert J. Reinstein, Dean of the James E. Beasley School of Law and a Vice President of Temple University; William T. Bergman, a Vice President of Temple University; the James E. Beasley School of Law; and Temple University - Of The Commonwealth System of Higher Education (collectively, "Defendants"), by and through their undersigned counsel, hereby submit this Memorandum of Law in Support of their Motion to Dismiss For Lack of Prosecution.

**I.      <u>BACKGROUND</u>**

Plaintiff Lincoln Herbert ("Plaintiff") is a former student of the James E. Beasley School of Law (the "Law School"). (Complaint attached as Exhibit A at ¶ 49 ). On January 28, 2002, Plaintiff commenced this <u>pro se</u> action by filing a praecipe for writ of summons in the Court of Common Pleas of Philadelphia County, Pennsylvania. After Plaintiff filed his complaint, Defendants removed the action to this Court.

Plaintiff's complaint is based on a series of incidents occurring between May 1998 and May 2001, at which time he claims that he was prevented from distributing or posting leaflets on University property by Temple campus police officers and/or Law School personnel. (Exhibit A at ¶¶ 20, 23, 155).  The complaint originally contained twenty-four separate counts, including claims for violations of Plaintiff's rights to freedom of expression and petition under both the United States and Pennsylvania Constitutions, as well as claims for violation of Plaintiff's right to equal protection under the United States and Pennsylvania Constitutions.

On May 8, 2002, Defendants filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) seeking dismissal of Plaintiff's Pennsylvania state law claims, as well as his claims relating to incidents that occurred in 1998 and 1999.  (See Defendants' Motion to Dismiss attached as Exhibit B).  Defendants argued that the state law claims were not legally cognizable, and that the claims stemming from the alleged 1998 and 1999 incidents were time-barred.  Plaintiff subsequently filed a Notice withdrawing the Pennsylvania state law claims.  In January 2003, this Court issued two Orders dismissing Plaintiff's Pennsylvania state law claims, and dismissing the claims based on incidents that occurred in 1998 and 1999 as time-barred. Thereafter, on July 20, 2004, Defendants filed their Answer and Affirmative Defenses to Plaintiff's complaint.

There has been no action in this case since Defendants' July 2004 filing.  Plaintiff has failed to undertake any efforts to prosecute his case beyond the pleadings.  Plaintiff has not even filed his initial disclosures as required by Federal Rule of Civil Procedure 26(a)(1).

## II.   ARGUMENT

### A.   Plaintiff's Complaint Should Be Dismissed For Lack Of Prosecution.

Pursuant to Federal Rule of Civil Procedure 41(b), and Local Rule 41.1(a), this Court may dismiss a plaintiff's action for lack of prosecution. Dunbar v. Triangle Lumber & Supply Co., 816 F.2d 126 (3d Cir. 1987); Young Jewish Leadership Concepts v. 939 HKH Corp., No. 93-cv-2643, 2005 U.S. Dist. Lexis 18095 (E.D.Pa. August 23, 2005). The decision to dismiss is a discretionary one, "necessary to allow district courts to prevent undue delays and to manage their own affairs so as to achieve [the] orderly and expeditious disposition of cases." Kubis v. Pa Bd. of Probation and Parole., No. 95-5875, 1998 U.S. Dist. Lexis 10512, at *4 (E.D. Pa. July 15, 1998) (citing Link v. Wabash R.R. Co., 370 U.S. 626 (1961)). In assessing whether to dismiss a case for lack of prosecution the Court should balance several factors. These factors are (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary; (3) any history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the meritoriousness of the claim or defense; and (6) the effectiveness of alternative sanctions. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984). Even though a court need not find that each factor is met in order to determine that dismissal is warranted, Hicks v. Feeney, 850 F.2d 152, 156 (3d Cir. 1988), each Poulis factor is present here and weighs strongly in favor of dismissing Plaintiff's case.

### 1.   Plaintiff bears personal responsibility for failing to prosecute his claims beyond the pleadings.

Plaintiff bears sole responsibility for failing to pursue his claims. A pro se litigant, such as Plaintiff, is "directly responsible for his own actions, or lack thereof." Wade v. Major Joe Wooten, No. 90-2373, 1993 U.S. Dist. Lexis 10680 at *8 (E.D.Pa. July 30, 1993). Although pro se litigants must be afforded "all reasonable latitude" by the court, pro se attorneys

do not warrant the same special treatment. <u>Id.</u> at n.16 (internal citations omitted); <u>DiCola v. Fulmele</u>, No. 93-0263, 1994 WL 642714 (E.D.Pa. November 15, 1994) (stating that because litigant is a pro se lawyer he is "personally responsible for his own failure to produce the requested discovery material and to appear or give proper notice of his inability to appear at trial").

Plaintiff's failure to pursue his claims "beyond the mere pleadings" is a factor which weighs strongly in favor of dismissal. <u>See</u> <u>Wade</u>, 1993 U.S. Dist. Lexis 10680 at *8. Defendants filed an Answer to Plaintiff's complaint nearly sixteen months ago on July 20, 2004. During this time period, Plaintiff has failed to pursue his claims despite ample opportunity to do so. His inaction reflects his decision not to prosecute his action.

**2.      <u>Plaintiff's failure to prosecute prejudices Defendants' ability to defend against the lawsuit.</u>**

Plaintiff's failure to prosecute his claims for more than a year prejudices Defendant's ability to adequately prepare a defense. "Prejudice," for the purpose of the <u>Poulis</u> analysis, does not require a finding of irreparable or "irremediable harm." <u>Ware v. Rodale Press, Inc.</u>, 322 F.3d 218, 222 (3d Cir. 2003). Instead, "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial." <u>Id.</u> Examples of prejudice include the "irretrievable loss of evidence," the "inevitable dimming of witnesses' memories" and the "excessive and possibly irremediable burdens or costs imposed on the opposing party." <u>Adams v. Trustees of the New Jersey Brewery Employees' Pension Trust Fund</u>, 29 F.3d 863, 874 (3d Cir. 1994). Plaintiff's lawsuit is based on a series of incidents, some of which took place more than seven years ago. Since that time, memories may have faded and potential witnesses have undoubtedly moved away, as is the nature of students in institutions of higher education. By failing to prosecute his claims in a timely manner, Plaintiff has prejudiced

Defendant's ability to adequately prepare a defense. Moreover, Plaintiff's delay imposes a financial burden on Defendants by forcing them to expend the costs and resources necessary to adequately defend a suit in which Plaintiff has clearly lost interest. The inevitable prejudice which Plaintiff's failure to prosecute has caused Defendants also weighs in favor dismissal.

### 3.    The history of this case is punctuated by Plaintiff's delays.

From the inception of this litigation, Plaintiff has been dilatory in pursuing his claims. For nearly two months, Plaintiff persisted in pursuing claims he knew to be invalid. Plaintiff had been intimately involved in the Sabatini lawsuit filed in this Court by Donald Sabatini, captioned at 99-CV-2393. Like the instant matter, Sabatini's case concerned several incidents at Law School graduation ceremonies in which Sabatini claimed that the Temple campus police violated his rights to freedom of speech and petition and his right to equal protection under the First and Fourteenth Amendments of the United States Constitution, and under Article I, sections 7 and 20 of the Pennsylvania Constitution. Sabatini's state constitutional claims were dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Sabatini v. Reinstein, No. 99-CV-2393, 1999 WL 636667 (E.D.Pa. August 20, 1999). Subsequently, his claims against Dean Reinstein, the equal protection claims, and the claims relating to the 1999 graduation ceremony were also dismissed on summary judgment. Sabatini v. Reinstein, 2000 WL 1052103 (E.D.Pa. July 21, 2000).

Despite Sabatini's lack of success and the passage of more then two years since the occurrence of several of the alleged incidents, Plaintiff filed a complaint in April 2002, much of which was markedly similar to Sabatini's complaint. Specifically, Plaintiff asserted claims under Article I sections 7 and 20 of the Pennsylvania Constitution, that were substantively

identical to the claims that were dismissed in the Sabatini lawsuit. (Exhibit A at at Counts I, V, IX, XIII, XVII, and XXII).

After removing Plaintiff's case to this Court, Defendants moved to dismiss Plaintiff's state constitutional claims on the ground that they were not legally cognizable. (See Exhibit B). Defendants served their motion to dismiss on Plaintiff along with a letter stating their intent to seek all available sanctions under both Pennsylvania and federal law in connection with any and all claims and/or allegations which were without a reasonable factual and legal basis. The letter also warned Plaintiff that, based on his participation in the Sabatini case, he had reason to know which of his claims were groundless. (Id.). Despite this warning, Plaintiff filed a brief in opposition to Defendants' Motion to Dismiss largely identical to the brief filed by Sabatini in his unsuccessful attempt to sustain his state constitutional claims in the prior lawsuit. Plaintiff did not withdraw the meritless state law claims until after Defendants served him with a Motion for Sanctions under Rule 11. Plaintiff's history of bad faith further warrants dismissal of his claims.

### 4.    Plaintiff has willfully failed to pursue his claims.

Plaintiff's failure to pursue his claims for nearly sixteen months goes beyond mere negligence. The Third Circuit has held that a plaintiff's total failure to pursue a claim beyond the mere pleadings may constitute willful conduct. Roman v. City of Reading, 121 Fed. Appx. 955, 961 (3d Cir. 2005); Wade, 1993 U.S. Dist. Lexis 10680 *10-11. At this juncture, Defendants can only assume that Plaintiff has lost interest in this litigation. Such lack of interest warrants dismissal.

5.     **The allegations in Plaintiff's complaint do not support recovery.**

The allegations in Plaintiff's complaint are without merit.  A claim will be deemed to be meritorious only "when the allegations of the pleadings, if established at trial, would support recovery by plaintiff".  Poulis, 747 F.2d at 870.

Of the twenty-four counts set forth in Plaintiff's complaint, only eight remain. These remaining counts are based on a series of incidents in which Plaintiff claims that Defendants violated his constitutional rights to equal protection and freedom of expression.  For the reasons thoroughly set forth in Defendants' Motion to Dismiss, Plaintiff's claims are not meritorious.  (See Exhibit B).  Accordingly, the fifth Poulis factor, like each of the preceding factors, weighs in favor of dismissal.

6.     **As a result of the prejudice that plaintiff's failure to prosecute has caused Defendants, dismissal is the only appropriate sanction.**

Dismissal is the only appropriate sanction in this case.  As discussed, Plaintiff's failure to pursue his claims beyond the mere pleadings prejudices Defendant's ability to adequately prepare a defense.  Moreover, Plaintiff's failure to prosecute goes beyond mere negligence and constitutes willful conduct.  Last, Plaintiff's claims lack merit and do not support recovery.  Because each Poulis factor has been met, Plaintiff's claims should be dismissed.

III.    **CONCLUSION**

For the foregoing reasons, Defendants respectfully request the entry of an Order

dismissing Plaintiff's claims for lack of prosecution.


Dated:  November 14, 2005

John B. Langel
Lucretia C. Clemons
Identification Nos.: 20714 and 83988
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500

Attorneys for Defendants
Robert J. Reinstein, William T. Bergman, The Beasley
School Of Law and Temple University

## CERTIFICATE OF SERVICE

I, Lucretia C. Clemons, hereby certify that on this date I served a copy of the

foregoing Defendants' Motion To Dismiss For Lack Of Prosecution and Memorandum of Law in

support thereof, via first-class mail, postage prepaid, upon the following:

Lincoln Herbert
83 South Lansdowne Avenue
No. C-7
Lansdowne, PA 19050

Dated: November 14, 2005

Lucretia C. Clemons

# EXHIBIT A

IN   THE   COMMONWEALTH   OF   PENNSYLVANIA
COURT   OF   COMMON   PLEAS   FOR   PHILADELPHIA   COUNTY

(THIS IS NOT AN ARBITRATION MATTER)

LINCOLN   HERBERT,                               :
                                                 :
                    PLAINTIFF                     :
                                                 :
            v.                                    :     JANUARY TERM
                                                 :     2002
ROBERT   J.   REINSTEIN,   DEAN OF               :
THE   BEASLEY   SCHOOL   OF   LAW   AND          :
VICE-PRESIDENT   OF   TEMPLE   UNIVERSITY;       :
                                                 :     NO. 003254
            AND                                  :
                                                 :
WILLIAM   T.   BERGMAN,   CHIEF,                 :
TEMPLE   UNIVERSITY   CAMPUS   POLICE;           :
                                                 :
            AND                                  :
                                                 :
THE   BEASLEY   SCHOOL   OF   LAW;               :
                                                 :
            AND                                  :
                                                 :
TEMPLE   UNIVERSITY,   INDIVIDUALLY,             :
                                                 :
                    DEFENDANTS                    :

02 APR 15 PM 4:54
PRO PROTHY
PRESENTED FOR REVIEW

====================================
**COMPLAINT - CIVIL ACTION**
====================================

### Parties

1.    Plaintiff Lincoln Herbert (hereafter, "Plaintiff")
is an adult domiciled in the Commonwealth of Pennsylvania.

2.    Defendants Robert J. Reinstein (hereafter, "Reinstein")
and William T. Bergman (hereafter, "Bergman") are adults whose
principal place of business is in Philadelphia, as is the venue of
the events in question that form the basis of this lawsuit.

3.    At all times material hereto, Reinstein was both Dean of
The Beasley School of Law (hereafter, "Law School") at Temple
University as well as a Vice-President of Temple University.

1

4.   At all times material hereto, Reinstein acted both in his individual capacity and as an agent of, and on behalf of, the Law School and Temple University (hereafter, "Temple").

5.   At all times material hereto, Bergman acted both in his individual capacity and as an agent of, and on behalf of, the Law School and Temple.

6.   Defendant Temple is designated as a state-related, Commonwealth University, and, as such, Temple receives operating funds from the Commonwealth of Pennsylvania.

7.   The above-captioned Defendants to this lawsuit, as officials, agents, and/or employees of Temple, as well as Temple itself, can be sued under both Article I of the Constitution of the Commonwealth of Pennsylvania and 42 U.S.C. § 1983.

8.   At all times material hereto, apart from acting individually, the aforestated officials, agents, and/or employees of Temple, as well as Temple itself, all operated in their official capacities as state actors, under color of state law, within the meaning of both Article I of the Constitution of the Commonwealth of Pennsylvania and of 42 U.S.C. § 1983.

9.   At all times material hereto, Defendants acted through their agents and employees, whose conduct Defendants had an affirmative duty to supervise, to regulate, and to control.

10.  At all times material hereto, Reinstein, at the very least, had knowledge of, and acquiesced in, all of the Temple police conduct, and in all of the administrative or executive conduct by either Law School administrator(s) or by Temple University administrator(s), which conduct violated Plaintiff's

2

legal rights, and by virtue of his dual executive roles (holding twin positions as Dean of the Law School and as Vice-President of Temple University), Reinstein had sufficient authority and control to have prevented Temple police officials, Law School officials, and/or other Temple University officials from violating those of Plaintiff's legal rights which violations form the basis of this lawsuit.

11.   At all times material hereto, and by virtue of his position as Chief of Temple's campus police force, Bergman, at the very least, had knowledge of, and acquiesced in, all of the Temple campus police conduct which violated Plaintiff's legal rights; and, by virtue of his executive position within the campus police force, Bergman furthermore had sufficient authority and control to have prevented Temple police officials from violating those of Plaintiff's legal rights which violations form the basis of this lawsuit.

## Jurisdiction and Venue

12.   Plaintiff hereby invokes the jurisdiction of this Court pursuant to Article I ("Declaration of Rights") of the Constitution of the Commonwealth of Pennsylvania, particularly § 7 ("Freedom of Press and Speech"), § 20 ("Right of Petition"), and § 26 ("No Discrimination by Commonwealth").

13.   Plaintiff further invokes the jurisdiction of this Court pursuant to 42 U.S.C. § 1983, providing for the jurisdiction of this Court in cases arising under the Constitution of the United States.

14.   The federal claims in this case arise under the First and Fourteenth Amendments to the United States Constitution.

15.   Venue is proper in this jurisdiction for all parties because the conduct described in this Complaint occurred in Philadelphia.

### Facts

16.   The outer boundaries of Temple's campus are not walled, gated, or otherwise locked, and Temple's outdoor grounds are open to alumni, as well as open to the general, non-student public.

17.   The outdoor Temple campus fits the classical legal definition of a "public forum" for purposes of freedom of expression as governed by both §§ 7, 20 of the Commonwealth of Pennsylvania Constitution and the First Amendment to the U.S. Constitution.

18.   Similarly, apart from numerous outdoor public fora on its campus, Temple also has many public fora which are located indoors.  Some examples of indoor settings at Temple constituting a typical public forum for purposes of constitutional freedoms of expression are: Temple and/or the Law School periodically host advertised public lectures to which the Law School or Temple have invited the general public and/or alumni.  Other such indoor public forum settings at Temple include indoor walls or bulletin boards on which both commercial and non-commercial public messages appear, indoor free newspaper racks, an indoor U.S. Post Office substation, indoor athletic events open to the public, indoor public events ticket offices, and indoor public ceremonies, like the annual Law School graduation ceremony.

4

19. Physical access to those public fora on the Temple campus which are located within campus buildings is open to alumni as well as open to the general public.

20. On a number of occasions, from May of 1998 to May of 2001, Plaintiff went to the Temple campus to distribute leaflets containing photocopied news articles which had appeared in the Philadelphia-area press. These articles all reported on the many civil rights lawsuits filed by various parties since 1994 against the Law School's Dean, Robert J. Reinstein.

21. It is fair to say (a) that the aforestated newspaper articles in Plaintiff's leaflets were all, to varying degrees, critical of Reinstein's civil rights record as Dean of the Law School; and (b) that, as such, Plaintiff's leaflets were publicly embarrassing to Reinstein personally, embarrassing to his administration, embarrassing to the Law School's public image, and embarrassing to Temple's public image.

22. On every occasion which forms the basis of the various Counts to this lawsuit, Temple officials, either police officials, or Law School officials in Reinstein's administration (on certain occasions even while standing just a few feet away from, and in plain view of, Reinstein himself), issued direct verbal orders to Plaintiff, forbidding Plaintiff from disseminating in a public forum the newspaper messages critical of Reinstein.

23. On many such occasions, Temple police physically threatened Plaintiff with arrest, and/or physically forced Plaintiff off campus.

5

24.   In taking such police actions and in otherwise interfering on numerous occasions with Plaintiff's lawful efforts to disseminate critical (but constitutionally protected) messages on campus, Temple officials violated Plaintiff's rights under both the Pennsylvania Constitution and the federal Constitution to disseminate non-commercial messages to his target audience in the public forum settings in question.

25.   This lawsuit therefore ensues, first, because Temple officials violated the law by interfering with Plaintiff's constitutional rights in various public forum settings to distribute newspaper messages critical of Reinstein's civil rights record at Temple.

26.   This lawsuit ensues, second, because Plaintiff can demonstrate that the Defendants to this action in the same and similar public forum settings at Temple **DID NOT** interfere with the dissemination of many other messages from individuals and groups whose messages were **uncritical** of Reinstein or the Law School, whereas Defendants **DID** interfere in those same and similar public forum settings with the dissemination of Plaintiff's newspaper messages which **WERE** critical of Reinstein.

27.   The messages uncritical of Temple which Reinstein and Temple DID permit were both commercial and non-commercial in nature, whereas Plaintiff's messages were exclusively non-commercial in nature.

28.   Under the law, Reinstein and Temple should have given Plaintiff's on-campus ***non-commercial*** messages ***equal or greater***

freedom to be disseminated than they gave to on-campus **commercial** messages, rather than far **less** freedom, as in fact occurred.

29.   Temple officials repeatedly restricted Plaintiff's ability to disseminate non-commercial messages critical of Reinstein within campus public forum settings at Temple, yet at the same time these same Temple officials did not similarly restrict dissemination of commercial or other messages NOT critical of Reinstein.   This discriminatory treatment constituted a violation of Plaintiff's right to EQUAL PROTECTION of the laws, as guaranteed under Article I, § 26 ("No Discrimination by Commonwealth") of the Constitution of the Commonwealth of Pennsylvania, and as further guaranteed under the Fourteenth Amendment to the United States Constitution.

30.   Prior to the events at issue in this lawsuit, Reinstein had a history of issuing orders to campus police officials concerning who was and who was not permitted to be present at, and/or distribute leaflets at, on-campus events which Temple Law had sponsored on the Temple campus, and which events had been otherwise open to non-student members of the public.

31.   At all times in question in this lawsuit, Reinstein, at the very least, had knowledge of, and acquiesced in, all of the aforestated, and hereafter stated, Temple police conduct, and Law School non-police conduct, which violated Plaintiff's legal rights.

32.   Not all of the conduct at issue in this lawsuit which violated Plaintiff's legal rights was Temple Police conduct, however.   Yet, for those Counts below which do involve Temple

Police conduct, Defendant Bergman, at the very least, had knowledge of, and acquiesced in, all of the aforestated, and hereafter stated, Temple police conduct which violated Plaintiff's legal rights.

**COUNT I**

**PENNSYLVANIA CONSTITUTION**

**ARTICLE I ("DECLARATION OF RIGHTS")**

**§ 7 ("FREEDOM OF PRESS AND SPEECH") AND § 20 ("RIGHT OF PETITION")**

**MAY 1998 VIOLATION OF FREEDOM OF EXPRESSION**

**(AGAINST ALL DEFENDANTS)**

33.   Plaintiff hereby reiterates and incorporates all averments in Paragraphs 1-32 as if fully repeated below.

34.   For the occasion of the May, 1998 Temple Law graduation day, Plaintiff and another alumnus, Donald Sabatini, Esq., carried leaflets containing newspaper articles critical of Reinstein's civil rights record.

35.   Temple campus police officials forbade Plaintiff and Sabatini, under threat of arrest, from exercising lawful First Amendment rights to distribute leaflets on matters of public concern at the newly-built Apollo Building on the Temple campus, where Temple was holding its the May, 1998 Temple Law graduation.

36.   The chief of the Temple campus police, Mr. William T. Bergman, personally intervened at the scene, reiterating the essence of the aforestated order, including an arrest threat, concerning leaflet distribution at the Apollo Building.

37.   Under duress, Plaintiff complied with the campus police order to leave the Apollo's lobby, lest he face arrest for such

8

continued on-campus leaflet distribution.  Plaintiff was thereafter unable to distribute effectively to his target audience, i.e., to those attending the 1998 graduation ceremony.

38.  The above restriction on Plaintiff's ability to disseminate a message of public concern in a public forum violated §§ 7, 20 of the Pennsylvania Constitution.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)   enjoin Defendants, permanently, from any further violation of FREEDOM OF EXPRESSION rights concerning on-campus distribution of messages on matters of public concern in outdoor and/or indoor "public forum" areas, regardless of whether said messages harshly criticize or ridicule members of the Temple administration, faculty, or any other persons;

(2)   enter judgment against the Defendants and award compensatory damages in Plaintiff's favor in the amount of ONE MILLION DOLLARS ($1,000,000); plus

(3)   award punitive damages, attorney's fees and costs; and

(4)   grant such other relief as this Court deems appropriate.

### COUNT II

### 42 U.S.C. § 1983

### MAY 1998 FIRST AMENDMENT VIOLATION

### (AGAINST ALL DEFENDANTS)

39.  Plaintiff hereby reiterates and incorporates all averments in Paragraphs 1-38 as if fully repeated below.

40.  The aforestated May 1998 conduct by campus police at the graduation ceremony violated Plaintiff's rights to freedom of expression under the First Amendment to the U.S. Constitution.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)   enjoin Defendants, permanently, from any further violation of FREEDOM OF EXPRESSION rights concerning on-campus distribution of messages on matters of public concern in

outdoor and/or indoor "public forum" areas, regardless of whether said messages harshly criticize or ridicule members of the Temple administration, faculty, or any other persons;

(2)   enter judgment against the Defendants and award compensatory damages in Plaintiff's favor in the amount of ONE MILLION DOLLARS ($1,000,000); plus

(3)   award punitive damages, attorney's fees and costs; and

(4)   grant such other relief as this Court deems appropriate.

**COUNT III**

**PENNSYLVANIA CONSTITUTION**

**ARTICLE I ("DECLARATION OF RIGHTS")**

**§ 26 ("NO DISCRIMINATION BY COMMONWEALTH")**

**MAY 1998 VIOLATION OF EQUAL PROTECTION**

**(AGAINST ALL DEFENDANTS)**

41.   Plaintiff hereby reiterates and incorporates all averments in Paragraphs 1-40 as if fully repeated below.

42.   Temple impermissibly prevented Plaintiff from distributing the aforestated leaflets on the Temple campus in May of 1998 because of the content of the leaflets.

43.   On the aforestated occasion of the May 1998 Temple Law graduation ceremony, Defendants intentionally treated Plaintiff differently concerning the exercise of his rights to freedom of expression on the Temple campus than Defendants had previously treated others who had similarly sought to exercise their right to freedom of expression on the Temple campus.

44.   The aforestated conduct by campus police at the May 1998 Law School graduation ceremony constituted a violation of § 26 of the Pennsylvania Constitution which guarantees the Commonwealth "shall [not] deny to any person the enjoyment of any civil right."

45.   The right to Equal Protection of the laws (a) certainly falls under the concept of "no discrimination by the Commonwealth," (b) is certainly a "civil right," as applicable under § 26, and therefore (c) Defendants' conduct on the May 1998 Law School graduation day certainly violated § 26 of the Pennsylvania Constitution.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)   enjoin Defendants, permanently, from any further violation of FREEDOM OF EXPRESSION rights concerning on-campus distribution of messages on matters of public concern in outdoor and/or indoor "public forum" areas, regardless of whether said messages harshly criticize or ridicule members of the Temple administration, faculty, or any other persons;

(2)   enter judgment against the Defendants and award compensatory damages in Plaintiff's favor in the amount of ONE MILLION DOLLARS ($1,000,000); plus

(3)   award punitive damages, attorney's fees and costs; and

(4)   grant such other relief as this Court deems appropriate.

### COUNT IV

### 42 U.S.C. § 1983

### MAY 1998 FOURTEENTH AMENDMENT VIOLATION

### (AGAINST ALL DEFENDANTS)

46.   Plaintiff hereby reiterates and incorporates all averments in Paragraphs 1-45 as if fully repeated below.

47.   In so preventing Plaintiff under threat of arrest from distributing the aforestated leaflets on the Temple campus in May of 1998, yet having previously permitted others, unimpeded, to exercise their campus their right to freedom of expression, Defendants violated Plaintiff's 14th Amendment right to Equal Protection of the laws.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)   enjoin Defendants, permanently, from any further violation of <u>EQUAL PROTECTION</u> rights concerning on-campus distribution of messages on matters of public concern in outdoor and/or indoor First Amendment "public forum" areas, regardless of whether said messages harshly criticize or ridicule members of the Temple administration, faculty, or any other persons;

(2)   enter judgment against the Defendants and award compensatory damages in Plaintiff's favor in the amount of ONE MILLION DOLLARS ($1,000,000); plus

(3)   award punitive damages, attorney's fees and costs; and

(4)   grant such other relief as this Court deems appropriate.

## COUNT V

### PENNSYLVANIA CONSTITUTION

### ARTICLE I ("DECLARATION OF RIGHTS")

### § 7 ("FREEDOM OF PRESS AND SPEECH") AND § 20 ("RIGHT OF PETITION")

### 20 MAY 1999 VIOLATION OF FREEDOM OF EXPRESSION

### (AGAINST ALL DEFENDANTS)

48.   Plaintiff hereby reiterates and incorporates all averments in Paragraphs 1-47 as if fully repeated below.

49.   The following year, on 20 May 1999, Plaintiff and fellow alumnus Sabatini again went to the Temple campus for the occasion of the annual Law School graduation ceremony.

50.   For the occasion, Plaintiff again carried with him updated leaflets which contained photocopied newspaper articles reporting on matters of public concern, namely Reinstein's civil rights record, and the litigation against him.

51.   A number of Temple police officers observed Plaintiff and Sabatini standing on campus outside the Apollo building handing out the aforesaid leaflets on 20 May 1999.

52.  Temple campus police then approached and requested to see the leaflets, several of which the officers then took away and began examining.

53.  After the Temple police had taken the leaflets, and after some Temple detectives had themselves also examined the leaflets (which the uniformed officers had apparently fetched for the detectives' perusal), two uniformed Temple police officers then approached Plaintiff and Sabatini.  One officer spoke, addressing both parties, issuing the following directive: "You can't hand these out here."

54.  Plaintiff then protested that he had a constitutional right to stand on campus and continue handing out the leaflets.

55.  The same uniformed campus police officer then ordered Plaintiff and Sabatini to go off Temple campus property to a public sidewalk if they wanted to distribute the leaflets.

56.  By their aforementioned conduct, and by their conduct as described below, the Temple campus police force did intentionally put Plaintiff in reasonable apprehension of being arrested and/or physically forced off campus on 20 May 1999.

57.  In particular, apart from ordering Plaintiff not to distribute his leaflets on campus, Temple police personnel also used harassing and physically intimidating police tactics.

58.  These tactics included close, overt surveillance in which uniformed campus police officers and/or plain clothes detectives physically surrounded Plaintiff at all times, then "shadowed" Plaintiff wherever he went, continually radioing Plaintiff's position and movements to other police.

59.  These harassing and intimidating police tactics could be observed by anyone to whom Plaintiff tried to talk or to give a leaflet.

60.  For the entire time on 20 May 1999 that Temple police observed Plaintiff and Sabatini on campus attempting to distribute their message without police interference, Temple police stood as little as five feet away.

61.  If Plaintiff or Sabatini walked five paces in any direction, Temple police moved with them, constantly radioing back and forth among themselves as to every observed movement.

62.  In like fashion, when Plaintiff and Sabatini eventually left the campus area where the graduation ceremony was located, campus detectives nevertheless continued these intimidating and harassing tactics of pursuing, surveilling, surrounding, and shadowing the leafleteers, although they had ceased leafleting.

63.  Temple's detectives, in fact, continued this harassing and intimidating conduct, pursuing Plaintiff and Sabatini even **after** they were **no longer** on Temple campus property.

64.  When Plaintiff approached the car he had arrived in, which was parked off campus, the Temple detectives still shadowed Plaintiff.

65.  After Plaintiff and Sabatini were sitting in Plaintiff's car talking off campus, the detectives would not leave.  The Temple police detectives surrounded Plaintiff's car, positioning themselves a few feet away, glaring at Plaintiff through the glass, sending radio reports to their colleagues.

66. Thus, despite having ceased leafleting, despite having left the graduation ceremony, despite having vacated campus property, and despite having shut himself up inside a car, Plaintiff only escaped Temple police harassment by driving towards Center City, Philadelphia.

67. All of Temple's aforestated illegal conduct occurred because of the content of the leaflets which Plaintiff had lawfully chosen to distribute on the Temple campus.

68. Temple police intimidated and harassed Plaintiff, as stated above. They also issued the direct police order, "You can't hand these out [on campus]," as stated above.

69. In so doing, and in so employing tactics of police harassment and intimidation in response to Plaintiff's perfectly lawful leaflet distribution, Temple police intentionally put Plaintiff in reasonable apprehension of arrest when he refused to cease his lawful on-campus leafleting.

70. Further, by making their police surveillance of Plaintiff visible to anyone with whom Plaintiff wished to talk or to whom Plaintiff wanted to hand out his leaflets, Defendants impermissibly interfered with Plaintiff's efforts to communicate a protected message in a free speech public forum on the Temple campus.

71. Defendants' aforestated intrusive conduct of 20 May 1999 therefore violated Plaintiff's rights under §§ 7, 20 of the Pennsylvania Constitution.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) enjoin Defendants, permanently, from any further violation of

FREEDOM OF EXPRESSION rights concerning on-campus
distribution of messages on matters of public concern in
outdoor and/or indoor "public forum" areas, regardless of
whether said messages harshly criticize or ridicule members
of the Temple administration, faculty, or any other persons;

(2)   enter judgment against the Defendants and award compensatory
damages in Plaintiff's favor in the amount of ONE MILLION
DOLLARS ($1,000,000); plus

(3)   award punitive damages, attorney's fees and costs; and

(4)   grant such other relief as this Court deems appropriate.

## COUNT VI

## 42 U.S.C. § 1983

## 20 MAY 1999 FIRST AMENDMENT VIOLATION

## (AGAINST ALL DEFENDANTS)

72.   Plaintiff hereby reiterates and incorporates all

averments in Paragraphs 1-71 as if fully repeated below.

73.   Defendants' aforestated intrusive conduct of 20 May 1999

also violated Plaintiff's First Amendment rights under the U.S.

Constitution.

WHEREFORE, Plaintiff respectfully requests that this Court:

Enjoin Defendants, permanently, from any further violation of
FREEDOM OF EXPRESSION rights concerning on-campus
distribution of messages on matters of public concern in
outdoor and/or indoor "public forum" areas, regardless of
whether said messages harshly criticize or ridicule members
of the Temple administration, faculty, or any other persons;

(2)   enter judgment against the Defendants and award compensatory
damages in Plaintiff's favor in the amount of ONE MILLION
DOLLARS ($1,000,000); plus

(3)   award punitive damages, attorney's fees and costs; and

(4)   grant such other relief as this Court deems appropriate.

## COUNT VII

### PENNSYLVANIA CONSTITUTION

### ARTICLE I ("DECLARATION OF RIGHTS")

### § 26 ("NO DISCRIMINATION BY COMMONWEALTH")

### 20 MAY 1999 EQUAL PROTECTION VIOLATION

### (AGAINST ALL DEFENDANTS)

74.  Plaintiff  hereby  reiterates  and  incorporates  all averments in Paragraphs 1-73 as if fully repeated below.

75.  Temple impermissibly prevented Plaintiff from distributing the aforestated leaflets on the Temple campus in May of 1999 because of the content of the leaflets.

76.  On the aforestated occasion of the May 1999 Temple Law graduation ceremony, Defendants intentionally treated Plaintiff differently concerning the exercise of his rights to freedom of expression on the Temple campus than Defendants had previously treated others who had similarly sought to exercise their right to freedom of expression on the Temple campus.

77.  The aforestated conduct by campus police at the May 1999 Law School graduation ceremony constituted a violation of § 26 of the Pennsylvania Constitution which guarantees the Commonwealth "shall [not] deny to any person the enjoyment of any civil right."

78.  The right to Equal Protection of the laws (a) certainly falls  under  the  concept  of  "no  discrimination  by  the Commonwealth," (b) is certainly a "civil right," as applicable under § 26, and therefore (c) Defendants' conduct on the May 1999 Law  School  graduation  day  certainly  violated  § 26  of  the Pennsylvania Constitution.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) enjoin Defendants, permanently, from any further violation of FREEDOM OF EXPRESSION rights concerning on-campus distribution of messages on matters of public concern in outdoor and/or indoor "public forum" areas, regardless of whether said messages harshly criticize or ridicule members of the Temple administration, faculty, or any other persons;

(2) enter judgment against the Defendants and award compensatory damages in Plaintiff's favor in the amount of ONE MILLION DOLLARS ($1,000,000); plus

(3) award punitive damages, attorney's fees and costs; and

(4) grant such other relief as this Court deems appropriate.

## COUNT VIII

### 42 U.S.C. § 1983

### 20 MAY 1999 FOURTEENTH AMENDMENT VIOLATION

### (AGAINST ALL DEFENDANTS)

79. Plaintiff hereby reiterates and incorporates all averments in Paragraphs 1-78 as if fully repeated below.

80. In so interfering with Plaintiff's ability to communicate a protected message on campus in May of 1999, yet having previously permitted others, unimpeded, to exercise their campus their right to freedom of expression, Defendants violated Plaintiff's 14th Amendment right to Equal Protection of the laws.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) enjoin Defendants, permanently, from any further violation of EQUAL PROTECTION rights concerning on-campus distribution of messages on matters of public concern in outdoor and/or indoor First Amendment "public forum" areas, regardless of whether said messages harshly criticize or ridicule members of the Temple administration, faculty, or any other persons;

(2) enter judgment against the Defendants and award compensatory damages in Plaintiff's favor in the amount of ONE MILLION DOLLARS ($1,000,000); plus

(3)   award punitive damages, attorney's fees and costs; and

(4)   grant such other relief as this Court deems appropriate.

## COUNT IX

## PENNSYLVANIA CONSTITUTION

## ARTICLE I ("DECLARATION OF RIGHTS")

## § 7 ("FREEDOM OF PRESS AND SPEECH") AND § 20 ("RIGHT OF PETITION")

## 27 JANUARY 2000 VIOLATION OF FREEDOM OF EXPRESSION

## (AGAINST REINSTEIN, THE LAW SCHOOL, AND TEMPLE)

81.   Plaintiff hereby reiterates and incorporates all averments in Paragraphs 1-80 as if fully repeated below.

82.   As Dean of the Law School, Reinstein controls access to the Law School for law students, Law School alumni, and non-law students.  He also controls what messages may be disseminated on general interest public bulletin boards and on wall spaces inside the law building.  As Dean, he further controls what printed matter may be disseminated via free, non-Temple newspaper racks which Reinstein allows to be placed conspicuously inside the Law School lobby.

83.   In early January of 2000, Plaintiff and many other Law School alumni received invitations by mail from the Law School. The mass mailing invited the alumni to attend a lunch-hour lecture and public discussion on legal ethics, scheduled for late January at the Law School.

84.   The speaker was noted trial lawyer and George Washington University law professor Michael Tigar.

85.   Prof. Tigar's lecture and discussion on legal ethics took place in the Law School's Moot Court Room on January 27, 2000.

86.   As Dean of the Law School, Reinstein was present at, hosted, and was in ultimate control of, the Prof. Tigar lecture event at the Law School.

87.   Thinking Prof. Tigar's lecture topic (legal ethics) strikingly relevant to the subject of Temple's and Dean Reinstein's track record of suppressing free speech on the Temple campus, Plaintiff decided to lawfully utilize the public forum Temple had created when it issued this mass invitation for alumni to pass through the Law School lobby and gather in the Moot Court Room for Prof. Tigar's public lecture and discussion.

88.   Temple had expressly invited Plaintiff and his alumni peers into a Law School public forum to hear discussion on matters of general concern to the alumni community.  Plaintiff therefore sought to distribute photocopied news articles detailing *another* matter of public concern to those same alumni, namely, Reinstein's and Temple's civil rights record.

89.   Some minutes before the aforestated 27 JANUARY 2000 Michael Tigar lecture, Plaintiff arrived for the lecture.

90.   Plaintiff and another alumnus, Donald Sabatini, began handing out the aforementioned newspaper article flyers to fellow alumni, faculty, and students as they were passing through the Law School lobby and entering the Moot Court Room before the Tigar lecture.

91.  Plaintiff's dissemination of the newspaper articles critical of Reinstein took place in part within the Law School lobby area, just a few feet away from other newspaper articles which Temple **WAS** allowing to be disseminated without interference.

92.  Both Dean Reinstein and Assistant Law School Dean Mary-Louise Esten soon observed the flyers critical of Reinstein's civil rights record being distributed to people passing through the lobby and entering the Moot Court Room.

93.  Esten obtained a flyer and examined it.

94.  After Esten had examined the flyer, she talked to Reinstein, who was himself sitting down looking at the same flyer a few paces away from Esten.

95.  Esten also walked up and convened with a campus police guard.

96.  During this time, Esten, Reinstein, and the police guard were all noticing Plaintiff and his fellow alumnus starting to distribute the flyers.

97.  After convening with the campus police guard, Esten then told Plaintiff and the other alumnus, Donald Sabatini: "You're not handing those out here." She forbade dissemination of the flyers inside the Law School building, although there were other newspaper and commercial messages by groups and individuals who were not law students being disseminated **WITHOUT INTERFERENCE** just a few feet away in the same Law School lobby, plus elsewhere around the Law School.

98.  Given the presence a few feet away (a) of Dean Reinstein himself (who was looking at a flyer), (b) of a campus police guard

21

with whom Dean Esten had just conferred before ordering Plaintiff not to give flyers to people entering the Moot Court Room for the public lecture, coupled with (c) Plaintiff's memory of Reinstein's prior history of allowing or ordering campus police to suppress freedom of expression, Plaintiff reasonably feared that the Law School administration's aforementioned order to stop distributing the flyers to people passing through the lobby and entering the Moot Court Room carried with it a threat of physical enforcement action and/or arrest by campus police.

99.  With Reinstein's knowledge and acquiescence, the administration of Temple Law thus impermissibly interfered with Plaintiff's efforts to disseminate a protected message on matters of public concern in a legitimate public forum.

100.  The aforestated Law School actions on 27 January 2000 therefore violated Plaintiff's exercise of his right to freedom of expression in a public forum, as defined by courts under §§ 7,20 of the Pennsylvania Constitution.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)  enjoin Defendants, permanently, from any further violation of FREEDOM OF EXPRESSION rights concerning on-campus distribution of messages on matters of public concern in outdoor and/or indoor "public forum" areas, regardless of whether said messages harshly criticize or ridicule members of the Temple administration, faculty, or any other persons;

(2)  enter judgment against the Defendants and award compensatory damages in Plaintiff's favor in the amount of ONE MILLION DOLLARS ($1,000,000); plus

(3)  award punitive damages, attorney's fees and costs; and

(4)  grant such other relief as this Court deems appropriate.

## COUNT X

## 42 U.S.C. § 1983

## 27 JANUARY 2000 FIRST AMENDMENT VIOLATION

## (AGAINST REINSTEIN, THE LAW SCHOOL, AND TEMPLE)

101. Plaintiff hereby reiterates and incorporates all averments in Paragraphs 1-100 as if fully repeated below.

102. The aforestated Law School administration actions impermissibly interfered with Plaintiff's efforts to disseminate a message of public concern in the Law School public forum on 27 January 2000.

103. This interference clearly took place in Reinstein's presence and with Reinstein's knowledge and acquiescence.

104. The Law School's aforestated conduct of January 27, 2000 therefore violated Plaintiff's First Amendment rights under the U.S. Constitution.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)   enjoin Defendants, permanently, from any further violation of FREEDOM OF EXPRESSION rights concerning on-campus distribution of messages on matters of public concern in outdoor and/or indoor "public forum" areas, regardless of whether said messages harshly criticize or ridicule members of the Temple administration, faculty, or any other persons;

(2)   enter judgment against the Defendants and award compensatory damages in Plaintiff's favor in the amount of ONE MILLION DOLLARS ($1,000,000); plus

(3)   award punitive damages, attorney's fees and costs; and

(4)   grant such other relief as this Court deems appropriate.

23

COUNT XI

PENNSYLVANIA CONSTITUTION

ARTICLE I ("DECLARATION OF RIGHTS")

§ 26 ("NO DISCRIMINATION BY COMMONWEALTH")

27 JANUARY 2000 EQUAL PROTECTION VIOLATION

(AGAINST REINSTEIN, THE LAW SCHOOL, AND TEMPLE)

105. Plaintiff hereby reiterates and incorporates all averments in Paragraphs 1-104 as if fully repeated below.

106. Temple impermissibly interfered with Plaintiff's efforts to distribute the aforestated leaflets on the occasion of the Prof. Michael Tigar legal ethics lecture because of the content of the leaflets.

107. On this 27 January 2000 occasion, Defendants intentionally treated Plaintiff differently concerning the exercise of his right to freedom of expression at the aforementioned Law School public forum setting than Defendants had previously treated others who had similarly sought to exercise their right to freedom of expression within public forum settings inside the Law School.

108. The aforestated conduct by the Law School Dean constituted a violation of § 26 of the Pennsylvania Constitution which guarantees the Commonwealth "shall [not] deny to any person the enjoyment of any civil right."

109. The right to Equal Protection of the laws (a) certainly falls under the concept of "no discrimination by the Commonwealth," (b) is certainly a "civil right," as applicable under § 26, and therefore (c) Defendants' conduct on the May 1999

24

Law School graduation day certainly violated § 26 of the Pennsylvania Constitution.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)   enjoin Defendants, permanently, from any further violation of FREEDOM OF EXPRESSION rights concerning on-campus distribution of messages on matters of public concern in outdoor and/or indoor "public forum" areas, regardless of whether said messages harshly criticize or ridicule members of the Temple administration, faculty, or any other persons;

(2)   enter judgment against the Defendants and award compensatory damages in Plaintiff's favor in the amount of ONE MILLION DOLLARS ($1,000,000); plus

(3)   award punitive damages, attorney's fees and costs; and

(4)   grant such other relief as this Court deems appropriate.

### COUNT XII

### 42 U.S.C. § 1983

### 27 JANUARY 2000 FOURTEENTH AMENDMENT VIOLATION

### (AGAINST REINSTEIN, THE LAW SCHOOL, AND TEMPLE)

110. Plaintiff hereby reiterates and incorporates all averments in Paragraphs 1-109 as if fully repeated below.

111. In so interfering with Plaintiff's effort to communicate a protected message on campus at the Tigar Lecture on 27 January 2000, yet having previously permitted others, unimpeded, to exercise their campus their right to freedom of expression in Law School public forum settings, Defendants violated Plaintiff's 14th Amendment right to Equal Protection of the laws.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)   enjoin Defendants, permanently, from any further violation of EQUAL PROTECTION rights concerning on-campus distribution of messages on matters of public concern in outdoor and/or indoor First Amendment "public forum" areas, regardless of whether said messages harshly criticize or ridicule members of the Temple administration, faculty, or any other persons;

(2)   enter judgment against the Defendants and award compensatory damages in Plaintiff's favor in the amount of ONE MILLION DOLLARS ($1,000,000); plus

(3)   award punitive damages, attorney's fees and costs; and

(4)   grant such other relief as this Court deems appropriate.

**COUNT XIII**

**PENNSYLVANIA CONSTITUTION**

**ARTICLE I ("DECLARATION OF RIGHTS")**

**§ 7 ("FREEDOM OF PRESS AND SPEECH") AND § 20 ("RIGHT OF PETITION")**

**15 APRIL 2000 VIOLATION OF FREEDOM OF EXPRESSION**

**(AGAINST REINSTEIN, THE LAW SCHOOL, AND TEMPLE)**

112. Plaintiff hereby reiterates and incorporates all averments in Paragraphs 1-111 as if fully repeated below.

113. In March of 2000, Plaintiff and many other Law School alumni received invitations by mail from the Law School. The mass mailing invited the alumni to attend the so-called "Law School Reception on 'Founder's Day,'" to be held on 15 April 2000 in Shusterman Hall on the Temple campus.

114. As Dean of the Law School, Reinstein spoke publicly at, hosted, and was in ultimate control of, the 15 April 2000 Founder's Day event.

115. Temple Law had created a public forum for alumni on the occasion of the 15 April 2000 Founder's Day Reception by the act of issuing this mailed invitation inducing alumni to gather on campus in Shusterman Hall for public speeches by Reinstein and others concerning matters of public concern to alumni.

116. Temple had expressly invited Plaintiff and his peers into a Law School-sponsored public forum to hear discussion on

26

matters of public concern to the alumni community.  Plaintiff therefore sought to distribute photocopied news articles detailing **another** matter of public concern to those same alumni, namely, Reinstein's and Temple's civil rights record.

117. Shortly before the Founder's Day public speeches and reception commenced, Plaintiff arrived at Shusterman Hall for the event.

118. Plaintiff and another alumnus, Donald Sabatini, began handing out the aforementioned flyers to Temple Law faculty and to fellow Law School alumni as they were entering Shusterman Hall before the public speeches and reception.

119. Both Dean Reinstein and Reinstein's Chief of Staff, Deborah Feldman, soon observed the flyers critical of Reinstein's civil rights record being distributed to people entering Shusterman Hall for the Founder's Day speeches and reception.

120. With Reinstein circulating in plain sight among the alumni and faculty just a few feet away, Reinstein's Chief of Staff, Deborah Feldman, accosted Plaintiff and Mr. Sabatini.

121. The first words which Mrs. Feldman directed to Plaintiff were, "You're not distributing those in here."

122. Mrs. Feldman positioned herself inside the entrance area to Shusterman Hall through which the arriving guests were passing in order to attend the event.  She then launched into a prolonged attempt by intimidation and harassment to prevent distribution of the flyers to Plaintiff's fellow alumni once they entered Shusterman Hall.

123. Mrs. Feldman kept insisting that Plaintiff had no right to distribute his flyers as he was.

124. Given the presence a few feet away (a) of Dean Reinstein himself, who by then knew of the flyer's content and distribution, coupled with (b) Plaintiff's memory of Reinstein's prior history of allowing or ordering campus police to suppress free speech on campus, Plaintiff reasonably concluded that the order by Reinstein's Chief of Staff to stop distributing the flyers to people entering Shusterman Hall was an order coming from Reinstein, or with his approval, and carried with it an implicit threat of physical enforcement action and/or arrest by campus police.

125. With Reinstein's knowledge and acquiescence, the administration of Temple Law thus impermissibly interfered with, harassed, and intimidated Plaintiff with the stated purpose of preventing Plaintiff from conveying a protected message on matters of public concern in a legitimate public forum.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)  enjoin Defendants, permanently, from any further violation of FREEDOM OF EXPRESSION rights concerning on-campus distribution of messages on matters of public concern in outdoor and/or indoor "public forum" areas, regardless of whether said messages harshly criticize or ridicule members of the Temple administration, faculty, or any other persons;

(2)  enter judgment against the Defendants and award compensatory damages in Plaintiff's favor in the amount of ONE MILLION DOLLARS ($1,000,000); plus

(3)  award punitive damages, attorney's fees and costs; and

(4)  grant such other relief as this Court deems appropriate.

## COUNT XIV

## 42 U.S.C. § 1983

### 15 APRIL 2000 FIRST AMENDMENT VIOLATION

### (AGAINST REINSTEIN, THE LAW SCHOOL, AND TEMPLE)

126. Plaintiff hereby reiterates and incorporates all averments in Paragraphs 1-125 as if fully repeated below.

127. Reinstein's and Temple's aforestated interference with Plaintiff's effort to disseminate a protected message on 15 April 2000 violated Plaintiff's First Amendment rights under the U.S. Constitution.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)   enjoin Defendants, permanently, from any further violation of FREEDOM OF EXPRESSION rights concerning on-campus distribution of messages on matters of public concern in outdoor and/or indoor "public forum" areas, regardless of whether said messages harshly criticize or ridicule members of the Temple administration, faculty, or any other persons;

(2)   enter judgment against the Defendants and award compensatory damages in Plaintiff's favor in the amount of ONE MILLION DOLLARS ($1,000,000); plus

(3)   award punitive damages, attorney's fees and costs; and

(4)   grant such other relief as this Court deems appropriate.

### COUNT XV

### PENNSYLVANIA CONSTITUTION

### ARTICLE I ("DECLARATION OF RIGHTS")

### § 26 ("NO DISCRIMINATION BY COMMONWEALTH")

### 15 APRIL 2000 EQUAL PROTECTION VIOLATION

### (AGAINST REINSTEIN, THE LAW SCHOOL, AND TEMPLE)

128. Plaintiff hereby reiterates and incorporates all averments in Paragraphs 1-127 as if fully repeated below.

129. Temple impermissibly interfered with Plaintiff's efforts to distribute the aforestated leaflets on the occasion of the 15 April 2000 Founders' Day event because of the content of the leaflets.

130. Defendants intentionally treated Plaintiff differently concerning the exercise of his right to freedom of expression at the aforementioned Law School public forum setting than Defendants had previously treated others who had similarly sought to exercise their right to freedom of expression within public forum settings at Law School events.

131. The aforestated conduct by the Law School Dean constituted a violation of § 26 of the Pennsylvania Constitution which guarantees the Commonwealth "shall [not] deny to any person the enjoyment of any civil right."

132. The right to Equal Protection of the laws (a) certainly falls under the concept of "no discrimination by the Commonwealth," (b) is certainly a "civil right," as applicable under § 26, and therefore (c) Defendants' conduct on the 15 April 2000 Law School event certainly violated § 26 of the Pennsylvania Constitution.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) enjoin Defendants, permanently, from any further violation of FREEDOM OF EXPRESSION rights concerning on-campus distribution of messages on matters of public concern in outdoor and/or indoor "public forum" areas, regardless of whether said messages harshly criticize or ridicule members of the Temple administration, faculty, or any other persons;

(2) enter judgment against the Defendants and award compensatory damages in Plaintiff's favor in the amount of ONE MILLION DOLLARS ($1,000,000); plus

(3)   award punitive damages, attorney's fees and costs; and

(4)   grant such other relief as this Court deems appropriate.

## COUNT XVI

## 42 U.S.C. § 1983

### 15 APRIL 2000 FOURTEENTH AMENDMENT EQUAL PROTECTION VIOLATION

### (AGAINST REINSTEIN, THE LAW SCHOOL, AND TEMPLE)

133. Plaintiff hereby reiterates and incorporates all averments in Paragraphs 1-132 as if fully repeated below.

134. In attempting impermissibly to prevent Plaintiff from distributing the aforestated leaflets at the public speeches and reception on Founder's Day in Shusterman Hall, yet having previously permitted others, unimpeded, to exercise their on-campus First Amendment rights within other public forum settings on campus, Defendants violated Plaintiff's Fourteenth Amendment right to Equal Protection of the laws.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)   enjoin Defendants, permanently, from any further violation of EQUAL PROTECTION rights concerning on-campus distribution of messages on matters of public concern in outdoor and/or indoor First Amendment "public forum" areas, regardless of whether said messages harshly criticize or ridicule members of the Temple administration, faculty, or any other persons;

(2)   enter judgment against the Defendants and award compensatory damages in Plaintiff's favor in the amount of ONE MILLION DOLLARS ($1,000,000); plus

(3)   award punitive damages, attorney's fees and costs; and

(4)   grant such other relief as this Court deems appropriate.

## COUNT XVII

### PENNSYLVANIA CONSTITUTION

### ARTICLE I ("DECLARATION OF RIGHTS")

### § 7 ("FREEDOM OF PRESS AND SPEECH") AND § 20 ("RIGHT OF PETITION")

### TWO 18 MAY 2000 FREEDOM OF EXPRESSION VIOLATIONS

### (AT THE LIACOURAS CENTER FOR THE LAW SCHOOL GRADUATION CEREMONY

### AND LATER THAT SAME DAY AT THE LAW SCHOOL FOLLOWING THE CEREMONY)

### (AGAINST ALL DEFENDANTS)

135. Plaintiff hereby reiterates and incorporates all averments in Paragraphs 1-134 as if fully repeated below.

### *FIRST* PA FREEDOM OF EXPRESSION VIOLATION ON 18 MAY 2000

136. On 18 May 2000, Plaintiff and another alumnus, Donald Sabatini, Esq., went to the Liacouras Center on the Temple campus, which was the site of that year's Law School graduation ceremony.

137. Plaintiff carried with him, and intended to distribute, leaflets containing photocopied newspaper articles reporting on matters of "public concern," namely Reinstein's civil rights record.

138. Temple campus police personnel observed Plaintiff on campus property at the Liacouras Center shortly before the graduation ceremony commenced.

139. Seeing that Plaintiff was attempting to hand out flyers critical of Reinstein's and Temple's civil rights record, a throng of Temple campus police accosted and surrounded Plaintiff.

140. Temple University's Chief of Campus Police, William T. Bergman, appeared on the scene, along with Chief Detective Robert Lowell.

32

141. Bergman became belligerent and ordered his throng of police to stop Plaintiff's leafleting inside the Liacouras Center lobby.

142. Plaintiff protested that he had a First Amendment right to distribute his flyers to graduation ceremony attendees in the lobby.  Bergman refused to relent.  After Bergman gave his expulsion order, Lowell shouted, "Let's take them out!" whereupon the throng of police physically forced Plaintiff out of the building.

143. Plaintiff then attempted to distribute his flyers on campus outside the Liacouras building.

144. Bergman and Lowell would not allow Plaintiff to leaflet on campus outside the Liacouras building.  Again, they physically forced Plaintiff to take his leafleting completely off campus property.

145. By their aforementioned intimidating conduct, the Temple campus police force did intentionally put Plaintiff in reasonable apprehension of being arrested and/or further physically abused at the Liacouras Center on 18 May 2000.

146. These harassing and intimidating police tactics were clearly observed by anyone to whom Plaintiff tried to talk or to give a leaflet, as was the physical police action forcing Plaintiff off campus property.

147. From the nearest off-campus location where Plaintiff was allowed to stand, Plaintiff was unable to effectively disseminate his flyers to the intended audience.

148. Reinstein's knowledge, acquiescence, and control over the campus police conduct in question at the 18 May 2000 law graduation was clear for a number of reasons, including, but not limited to: (a) the fact that a lawsuit by Mr. Sabatini had already been filed in 1999, which detailed the very same campus police abuses in prior years towards Mr. Sabatini; and (b) the fact that Reinstein himself had been deposed in April of 2000 concerning the matter of campus police actions at past Law School graduation ceremonies, so (c) Reinstein clearly was on notice in early May of 2000 as to foreseeable police actions towards leafleteers at the May, 2000 graduation.

149. Beyond question, these types of formal "notice" to Reinstein attendant to the 1999 Sabatini lawsuit and attendant to the April 2000 deposition therefore prove Reinstein's knowledge of, and acquiescence to, the illicit campus police conduct against Plaintiff at the May 2000 law graduation ceremonies, because Reinstein knew what had been occurring for years at past graduations, and chose not to intervene and stop the police from repeating their past pattern of conduct at these official Law School functions.

### *SECOND* PA FREEDOM OF EXPRESSION VIOLATION ON 18 MAY 2000 (LATER AT THE LAW BUILDING ITSELF - NOT THE GRADUATION CEREMONY)

150. After Temple police forced Plaintiff off campus at the Liacouras Center graduation ceremony, Plaintiff later returned that same afternoon to the Temple campus, entering the Law School building itself, where no graduation events were taking place.

151. As Dean of the Law School, Reinstein controls access to the Law School for non-law students. He also controls what messages may be posted on general interest public bulletin boards inside the law building, and what printed matter may be placed in the newspaper racks inside the Temple Law School lobby.

152. As a Temple Law alumnus, Plaintiff had a right to enter the law building, which right the guard did not dispute.

153. The campus police desk guard soon observed, however, that Plaintiff had flyers with him, and told Plaintiff that, under "Law School rules," he could not allow Plaintiff to distribute any of the flyers inside the Law School.

154. The Law School police guard would therefore only permit Plaintiff to circulate in the building on condition that Plaintiff did not fully exercise his right to freedom of expression.

155. Plaintiff had expressly intended at the Law School to exercise his right to post his newspaper article flyers on the very same indoor public bulletin boards where a variety of other commercial and non-commercial printed messages were posted without comparable restriction.

156. Thus, once again, Reinstein's Law School administration was ordering or allowing security agents of the campus police to impermissibly restrict Plaintiff's First Amendment rights in several Law School indoor public fora.

157. Temple had permitted non-law students like Plaintiff to post other commercial and non-commercial messages in the same places as Plaintiff now wished to distribute his own message.

158. Given (a) Dean Reinstein's history of ordering and/or allowing such selective, unlawful restrictions on First Amendment rights; and (b) given what had just happened with campus police chief Bergman and his subordinates physically forcing Plaintiff off campus when he tried to leaflet before the graduation ceremony, Plaintiff feared with good reason that the Law School administration's order as conveyed through the front desk police guard carried with it an implicit threat of physical enforcement action and/or arrest by campus police.

159. Reinstein and Temple thus impermissibly prevented Plaintiff from conveying a protected message on matters of public concern in several legitimate public fora (general notice law school bulletin boards and front lobby newspaper racks).

160. Defendants' aforestated content-based proscription preventing Plaintiff from disseminating messages at the Law School on 18 May 2000 therefore violated Plaintiff's right to freedom of expression under §§ 7, 20 of the Pennsylvania Constitution.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)   enjoin Defendants, permanently, from any further violation of FREEDOM OF EXPRESSION rights concerning on-campus distribution of messages on matters of public concern in outdoor and/or indoor "public forum" areas, regardless of whether said messages harshly criticize or ridicule members of the Temple administration, faculty, or any other persons;

(2)   enter judgment against the Defendants and award compensatory damages in Plaintiff's favor in the amount of ONE MILLION DOLLARS ($1,000,000); plus

(3)   award punitive damages, attorney's fees and costs; and

(4)   grant such other relief as this Court deems appropriate.

## COUNT XVIII

### 42 U.S.C. § 1983

### *TWO* 18 MAY 2000 FIRST AMENDMENT VIOLATIONS

### (AGAINST ALL DEFENDANTS)

161. Plaintiff hereby reiterates and incorporates all averments in Paragraphs 1-160 as if fully repeated below.

162. As stated above, Plaintiff lawfully attempted to distribute the aforestated leaflets while standing unobtrusively in indoor and outdoor public forum areas at the May, 2000 law graduation ceremony at the Liacouras Center, and then later that same day Plaintiff lawfully attempted to post the same messages within public forum settings at the Law School where other outside messages, both commercial and non-commercial, were being permitted to be disseminated.

163. Because the Liacouras Center's lobby and outdoor apron area were a public forum, Plaintiff thus had no less a First Amendment right to distribute his flyers on campus at the Liacouras Center than did Temple employees handing out "official" law graduation programs, or as have countless other non-students who have distributed printed materials without hindrance in the past, via on-campus postings on designated indoor and outdoor public bulletin boards and/or via on-campus printed hand-outs carrying commercial and/or non-commercial messages of public interest to the Temple University community.

164. Temple's aforementioned actions on 18 May 2000 thus violated Plaintiff's right under the First Amendment to the U.S. Constitution to freedom of expression in a public forum.

37

(1)   enjoin Defendants, permanently, from any further violation of FREEDOM OF EXPRESSION rights concerning on-campus distribution of messages on matters of public concern in outdoor and/or indoor "public forum" areas, regardless of whether said messages harshly criticize or ridicule members of the Temple administration, faculty, or any other persons;

(2)   enter judgment against the Defendants and award compensatory damages in Plaintiff's favor in the amount of ONE MILLION DOLLARS ($1,000,000); plus

(3)   award punitive damages, attorney's fees and costs; and

(4)   grant such other relief as this Court deems appropriate.

**COUNT XIX**

**PENNSYLVANIA CONSTITUTION**

**ARTICLE I ("DECLARATION OF RIGHTS")**

**§ 26 ("NO DISCRIMINATION BY COMMONWEALTH")**

**TWO 18 MAY 2000 FREEDOM OF EXPRESSION VIOLATIONS**

**(AGAINST ALL DEFENDANTS)**

165.  Plaintiff hereby reiterates and incorporates all averments in Paragraphs 1-164 as if fully repeated below.

166.  Defendants intentionally treated Plaintiff differently concerning the exercise of his right to freedom of expression at the both of the TWO aforementioned Law School public forum settings on 18 May 2000 than Defendants had previously treated others who had similarly sought to exercise their right to freedom of expression at Law School public forum settings.

167.  The aforestated conduct by the Law School Dean constituted a violation of § 26 of the Pennsylvania Constitution which guarantees the Commonwealth "shall [not] deny to any person the enjoyment of any civil right."

168. The right to Equal Protection of the laws (a) certainly falls under the concept of "no discrimination by the Commonwealth," (b) is certainly a "civil right," as applicable under § 26, and therefore (c) Defendants' conduct at the 18 May 2000 Law School graduation, and then later at the Law School itself that same day, certainly violated § 26 of the Pennsylvania Constitution.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)   enjoin Defendants, permanently, from any further violation of FREEDOM OF EXPRESSION rights concerning on-campus distribution of messages on matters of public concern in outdoor and/or indoor "public forum" areas, regardless of whether said messages harshly criticize or ridicule members of the Temple administration, faculty, or any other persons;

(2)   enter judgment against the Defendants and award compensatory damages in Plaintiff's favor in the amount of ONE MILLION DOLLARS ($1,000,000); plus

(3)   award punitive damages, attorney's fees and costs; and

(4)   grant such other relief as this Court deems appropriate.

### COUNT XX

### 42 U.S.C. § 1983

### TWO 18 MAY 2000 FOURTEENTH AMENDMENT VIOLATIONS

### (AGAINST ALL DEFENDANTS)

169. Plaintiff hereby reiterates and incorporates all averments in Paragraphs 1-168 as if fully repeated below.

170. The aforestated conduct on two occasions on 18 May 2000 by Defendants violated Plaintiff's Fourteenth Amendment right to Equal Protection of the laws.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)   enjoin Defendants, permanently, from any further violation of EQUAL PROTECTION rights concerning on-campus distribution

of messages on matters of public concern in outdoor and/or
indoor First Amendment "public forum" areas, regardless of
whether said messages harshly criticize or ridicule members
of the Temple administration, faculty, or any other persons;

(2)   enter judgment against the Defendants and award compensatory
damages in Plaintiff's favor in the amount of ONE MILLION
DOLLARS ($1,000,000); plus

(3)   award punitive damages, attorney's fees and costs; and

(4)   grant such other relief as this Court deems appropriate.

COUNT XXI

PENNSYLVANIA CONSTITUTION

ARTICLE I ("DECLARATION OF RIGHTS")

§ 7 ("FREEDOM OF PRESS AND SPEECH") AND § 20 ("RIGHT OF PETITION")

MAY 2001 VIOLATION OF FREEDOM OF EXPRESSION

(AGAINST REINSTEIN, THE LAW SCHOOL, AND TEMPLE)

171. Plaintiff hereby reiterates and incorporates all
averments in Paragraphs 1-170 as if fully repeated below.

172. In May of 2001, Plaintiff again went to the Temple
campus to distribute newspaper article leaflets discussing
Reinstein's civil rights record, and the history of litigation
against him and Temple concerning freedom of expression.

173. Again, William T. Bergman, the Chief of the campus
police, appeared on the scene at the Liacouras Center. Again,
under duress and threat of arrest, Bergman used his police
officers to physically expel Plaintiff and Donald Sabatini, Esq.
from the Liacouras Center lobby as the two were attempting to
exercise their lawful right to disseminate a protected message.

174. This conduct violated §§ 7, 20 of the Pennsylvania
Constitution.

WHEREFORE, Plaintiff respectfully requests that this Court:

40

(1)   enjoin Defendants, permanently, from any further violation of FREEDOM OF EXPRESSION rights concerning on-campus distribution of messages on matters of public concern in outdoor and/or indoor "public forum" areas, regardless of whether said messages harshly criticize or ridicule members of the Temple administration, faculty, or any other persons;

(2)   enter judgment against the Defendants and award compensatory damages in Plaintiff's favor in the amount of ONE MILLION DOLLARS ($1,000,000); plus

(3)   award punitive damages, attorney's fees and costs; and

(4)   grant such other relief as this Court deems appropriate.

## COUNT XXII

### 42 U.S.C. § 1983

### MAY 2001 FIRST AMENDMENT VIOLATION

### (AGAINST ALL DEFENDANTS)

175. Plaintiff hereby reiterates and incorporates all averments in Paragraphs 1-174 as if fully repeated below.

176. This conduct by Temple police at the May 2001 Law School graduation ceremony violated Plaintiff's right to freedom of expression under the First Amendment to the U.S. Constitution.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)   enjoin Defendants, permanently, from any further violation of FREEDOM OF EXPRESSION rights concerning on-campus distribution of messages on matters of public concern in outdoor and/or indoor "public forum" areas, regardless of whether said messages harshly criticize or ridicule members of the Temple administration, faculty, or any other persons;

(2)   enter judgment against the Defendants and award compensatory damages in Plaintiff's favor in the amount of ONE MILLION DOLLARS ($1,000,000); plus

(3)   award punitive damages, attorney's fees and costs; and

(4)   grant such other relief as this Court deems appropriate.

## COUNT XXIII

### PENNSYLVANIA CONSTITUTION

### ARTICLE I ("DECLARATION OF RIGHTS")

### § 26 ("NO DISCRIMINATION BY COMMONWEALTH")

### MAY 2001 FREEDOM OF EXPRESSION VIOLATIONS

### (AGAINST ALL DEFENDANTS)

177. Plaintiff hereby reiterates and incorporates all averments in Paragraphs 1-176 as if fully repeated below.

178. Defendants intentionally treated Plaintiff differently concerning the exercise of his right to freedom of expression at the Law School May 2001 graduation ceremony than Defendants had previously treated others who had similarly sought to exercise their right to freedom of expression at Law School public forum settings.

179. The aforestated conduct by the Law School Dean constituted a violation of § 26 of the Pennsylvania Constitution which guarantees the Commonwealth "shall [not] deny to any person the enjoyment of any civil right."

180. The right to Equal Protection of the laws (a) certainly falls under the concept of "no discrimination by the Commonwealth," (b) is certainly a "civil right," as applicable under § 26, and therefore (c) Defendants' conduct at the May 2001 Law School graduation certainly violated § 26 of the Pennsylvania Constitution.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) enjoin Defendants, permanently, from any further violation of FREEDOM OF EXPRESSION rights concerning on-campus distribution of messages on matters of public concern in

42

outdoor and/or indoor "public forum" areas, regardless of whether said messages harshly criticize or ridicule members of the Temple administration, faculty, or any other persons;

(2)   enter judgment against the Defendants and award compensatory damages in Plaintiff's favor in the amount of ONE MILLION DOLLARS ($1,000,000); plus

(3)   award punitive damages, attorney's fees and costs; and

(4)   grant such other relief as this Court deems appropriate.

**COUNT XXIV**

**42 U.S.C. § 1983**

**MAY 2001 FOURTEENTH AMENDMENT EQUAL PROTECTION VIOLATION**

**(AGAINST ALL DEFENDANTS)**

181. Plaintiff hereby reiterates and incorporates all averments in Paragraphs 1-180 as if fully repeated below.

182. The aforestated conduct at the May 2001 Law School graduation ceremony by Defendants violated Plaintiff's Fourteenth Amendment right to Equal Protection of the laws.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)   enjoin Defendants, permanently, from any further violation of EQUAL PROTECTION rights concerning on-campus distribution of messages on matters of public concern in outdoor and/or indoor First Amendment "public forum" areas, regardless of whether said messages harshly criticize or ridicule members of the Temple administration, faculty, or any other persons;

(2)   enter judgment against the Defendants and award compensatory damages in Plaintiff's favor in the amount of ONE MILLION DOLLARS ($1,000,000); plus

(3)   award punitive damages, attorney's fees and costs; and

(4)   grant such other relief as this Court deems appropriate.

Respectfully submitted,

Dated: 15 April 2002

Lincoln Herbert, *pro se*, Plaintiff
83 South Lansdowne Avenue, No. C-7
Lansdowne, Pa  19050      610-622-2669

## CERTIFICATE OF SERVICE

After having previously started suit by summons against the above-captioned Defendants in this matter, and after having effected the required in-person service thereof, I hereby certify that I caused a true and correct copy of Plaintiff's Complaint to be served via first-class mail to Defendants via Defendants' Associate Legal Counsel, James H. Bocchinfuso, Esq., at the address stated below:

Temple University
Office of University Counsel
400 Carnell Hall
1803 North Broad Street
Philadelphia, Pa  19103.

Dated:  15 April 2002

Lincoln Herbert, *pro se*
Plaintiff
83 South Lansdowne Avenue, No. C-7
Lansdowne, Pa  19050
610-622-2669

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LINCOLN HERBERT,                          :
                                          :
            Plaintiff,                    :
                                          :
      v.                                  :
                                          :        CIVIL ACTION NO.  022671
ROBERT J. REINSTEIN,                      :
WILLIAM T. BERGMAN,                       :
THE BEASLEY SCHOOL OF LAW,                :
AND                                       :
TEMPLE UNIVERSITY,                        :
                                          :
            Defendants.                   :

## DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)

For the reasons set forth in the accompanying memorandum of law, Defendants,

Temple University – Of the Commonwealth System of Higher Education ("Temple"), James E.

Beasley School of Law (the "Law School") Robert J. Reinstein, Dean of the Law School and a

Vice President of Temple, and William Bergman, a Vice President of Temple, respectfully

request that this Court enter an Order dismissing Counts I, II, III, IV, V, VI, VII, VIII, IX, XIII,

XVII, and XXI of the Complaint in the above-captioned case, with prejudice.

Respectfully submitted,

Dated: May 8, 2002

_____
Burt Rublin, #32444
Carrie Watt, #71119
BALLARD SPAHR ANDREWS &
      INGERSOLL, LLP
1735 Market St., 51st Floor
Philadelphia, PA  19103
215-665-8500
Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LINCOLN HERBERT,                          :
                                          :
              Plaintiff,                 :
                                          :
    v.                                    :
                                          :       CIVIL ACTION NO. 022671
ROBERT J. REINSTEIN,                      :
WILLIAM T. BERGMAN,                       :
THE BEASLEY SCHOOL OF LAW,                :
AND                                       :
TEMPLE UNIVERSITY,                        :
                                          :
             Defendants.                :

## **ORDER**

      AND NOW, this _____ day of _____, 2002, upon

consideration of Defendants' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6), it is hereby

      ORDERED AND DECREED that the Motion to dismiss is GRANTED in its

entirety; and it is further

      ORDERED AND DECREED that Counts I, II, III, IV, V, VI, VII, VIII, IX, XIII,

XVII, and XXI of the Complaint in the above-captioned case are hereby DISMISSED WITH

PREJUDICE, and it is further

      ORDERED AND DECREED that Plaintiff shall file an amended complaint

within twenty (20) days of the date of entry of this Order.


                                      _____ ___ _____

                                                          J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINCOLN HERBERT, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | :   CIVIL ACTION NO. 022671 |
| ROBERT J. REINSTEIN, | : |
| WILLIAM T. BERGMAN, | : |
| THE BEASLEY SCHOOL OF LAW, | : |
| AND | : |
| TEMPLE UNIVERSITY, | : |
| | : |
| Defendants. | : |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)

Defendants, Temple University – Of the Commonwealth System of Higher Education ("Temple"), James E. Beasley School of Law (the "Law School") Robert J. Reinstein, Dean of the Law School and a Vice President of Temple, and William Bergman, a Vice President of Temple (collectively, "Defendants"),[1] hereby move for dismissal of Counts I, V, IX, XIII, XVII, and XXI of the Plaintiff's Complaint in the above-referenced matter, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.    Introduction

Plaintiff Lincoln Herbert ("Plaintiff") is a former student of the Law School. (See, e.g., Complaint at ¶ 49). On January 28, 2002, Plaintiff commenced this pro se action by

---

[1]    Plaintiff has incorrectly designated Defendants in his Complaint as "Robert J. Reinstein, Dean of the Beasley School of Law and Vice President of Temple University; William T. Bergman, Chief, Temple University Campus Police; The Beasley School of Law; and Temple University."

filing a praecipe for writ of summons in the Court of Common Pleas of Philadelphia County, Pennsylvania.  After Plaintiff filed his complaint setting forth the claims on which this action is based, Defendants removed the action to this Court.

Plaintiff's complaint is based on a series of incidents in which he claims that the Defendants violated his constitutional rights to freedom of expression, petition, and equal protection.  According to the Complaint, the incidents occurred at various events on Temple's campus, including the following:

- a Law School graduation ceremony in May 1998 (Complaint ¶ ¶  33 – 46);

- a Law School graduation ceremony in May 1999 (Complaint, ¶ ¶ 47 – 80);

- a lecture given at the Law School in January 2000 (Complaint, ¶ ¶  81 – 111);

- a reception at the Law School in April 2000 (Complaint, ¶ ¶ 112 – 134);

- a Law School graduation ceremony in May 2000 (Complaint ¶ ¶ 135 – 170); and

- a Law School graduation ceremony in May 2001 (Complaint, ¶ ¶ 171 – 182).

Plaintiff alleges that on each of these occasions, he attempted to distribute or post leaflets on University property.  (E.g., Complaint, ¶ ¶  20, 155).  Plaintiff further alleges that on each occasion, he was confronted by Temple campus police officers and/or Law School personnel, who told him that he was not permitted to distribute or post his leaflets on University property.  (E.g., Complaint, ¶ 23).  Plaintiff has alleged that on some of the occasions, he was ordered to leave the buildings where the graduation ceremonies and other events were being held, and was forced to distribute his leaflets "off campus" on the adjacent public sidewalk. (E.g., Complaint ¶ ¶ 23, 55).  Plaintiff has not alleged that he was arrested in any of the incidents, nor has he alleged that he sustained any physical or financial harm as a result of any of the

incidents.  Nonetheless, Plaintiff seeks one million dollars in compensatory damages, as well as punitive damages, attorneys' fees, costs and injunctive relief as a result of each of the seven incidents in question.

The Complaint contains twenty-four separate counts, including claims for violation of the Plaintiff's rights to freedom of expression and petition under the United States and Pennsylvania Constitutions, as well as claims for violation of the Plaintiff's right to equal protection under the United States and Pennsylvania Constitutions.  Counts I, V, IX, XIII, XVII, and XXI, containing the Plaintiff's claims under Article I, section 7 and 20 of the Pennsylvania Constitution, and Counts I through VIII, containing the Plaintiff's claims relating to the 1998 and 1999 graduation incidents, are addressed in this Motion.

## II.   Argument

### A.   Counts I, V, IX, XIII, XVII, and XXI of the Complaint should be dismissed because Plaintiff's claims under Article I, Sections 7 and 20 of the Pennsylvania Constitution are not legally cognizable.

Counts I, V, IX, XIII, XVII, and XXI of the complaint contain the Plaintiff's claims for violation of his rights under Article I, Sections 7 and 20 of the Pennsylvania Constitution in connection with each of the incidents.  Section 7 refers to freedom of the press and freedom of speech, while section 20 refers to the rights of petition and assembly.  Pa. Const. art. I, § § 7, 20.  While these constitutional provisions limit the power of the state to restrict certain individual rights, they are not self-executing, affirmative declarations that individuals may exercise their rights of free speech and petition wherever they choose, in derogation of the rights of private property owners.  Western Pa. Socialist Workers 1982 Campaign v. Connecticut Gen. Life Ins. Co., 335 Pa. Super. 493, 501, 485 A.2d 1, 5 (1984), aff'd., 512 Pa. 23, 515 A.2d 1331 (1986).

3

In his complaint, Plaintiff has attempted to set forth private claims for damages pursuant to these sections of the Pennsylvania Constitution.  However, federal courts have held that article I, section 7 of the Pennsylvania Constitution contains "no provision, express or implied, which creates a private right of action for violations of an individual's right to free speech." Lees v. West Greene School Dist., 632 F. Supp. 1327, 1334 (W.D. Pa. 1986); see also Pendrell v. Chatham College, 386 F. Supp.  341, 344 (W.D. Pa. 1974).  Likewise, no Pennsylvania statute or case law provides for such a private right of action under this section of the state Constitution. Lees, 632 F. Supp. at 1334; Pendrell, 386 F. Supp. at 344.  The same is true of article I, section 20 of the Pennsylvania Constitution. See Western Pa. Socialist Workers 1982 Campaign, 335 Pa. Super. at 499, 485 A.2d at 4 ("our interpretation of section 7 is controlling also of any interpretation of sections 2 and 20"); Sabatini v. Reinstein, No. 99-2393, 1999 WL 636667, at *3 n. 5 (E.D. Pa. Aug 20, 1999) ("the prohibition against such claims under § 7 applies with equal force to the analogous freedom of petition provision").

Courts faced with private claims under these provisions of the Pennsylvania Constitution have routinely dismissed them. See, e.g., Holder v. City of Allentown, No. 91-240, 1994 WL 236546, at *3 (E.D. Pa. May 27, 1994) (granting summary judgment with respect to a claim under article I, section 7 of the Pennsylvania Constitution because no such cause of action exists); Lees, 632 F. Supp. at 1334 (dismissing a claim for violation of free speech rights under article I, section 7 of the Pennsylvania Constitution pursuant to Rule 12(b)(6)); Pendrell, 386 F. Supp. at 344 (reaching the same result as Lees).  In fact, in Sabatini v. Reinstein, a related case involving claims that are both factually and legally identical to those at issue here, Judge Ludwig of this Court dismissed the plaintiff's state constitutional claims.  1999 WL 636667, at *3.

Dismissal of the plaintiff's claims under article I, sections 7 and 20 of the Pennsylvania Constitution is equally appropriate here.

**B.    Counts I through VIII should be dismissed because plaintiff's claims relating to incidents that occurred in 1998 and 1999 are time-barred.**

The claims set forth in Counts I through VIII of the Plaintiff's Complaint should also be dismissed as time-barred. Although the statute of limitations is an affirmative defense, the defense may be raised in a Rule 12(b)(6) motion to dismiss when the running of the statute is apparent from the face of the complaint. Such is the case with respect to the claims set forth in Counts I through VIII of the Plaintiff's Complaint, relating to incidents that occurred at the Law School graduation ceremonies in May 1998 and May 1999.

There is no federal statute of limitations for actions under 42 U.S.C. § 1983. Elliott, Reihner, Siedzikowski & Egan, P.C. v. Pennsylvania Employees Benefit Trust Fund, 161 F. Supp. 2d 413, 420 (E.D. Pa. 2001), aff'd., 2002 WL 336964 (3d Cir. 2002). Section 1983 claims are therefore governed by the relevant state's statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 276 (1989); Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991). In Pennsylvania, the applicable personal injury statute of limitations is two years. 42 Pa.C.S.A. § 5524(7); see also Sameric Corp. of Delaware, Inc. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998).

The statute of limitations begins to run when the cause of action accrues. Elliott, Reihner, 161 F. Supp. 2d at 420. Civil rights claims under section 1983 accrue "when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." Genty, 937 F.2d at 919; see also Elliott, Reihner, 161 F. Supp. 2d at 420-1.

Counts I through VIII of the Complaint purport to set forth claims for incidents which took place in 1998 and 1999. To the extent that the plaintiff was injured at all as a result of either of these two incidents,[2] he would have been aware of such injuries immediately when the incidents occurred, and his causes of action, if any, relating to these incidents would have accrued immediately as well. Despite his awareness of his "injuries," Plaintiff delayed in filing his complaint for more than two years. His claims relating to the 1998 and 1999 graduation incidents must therefore be dismissed as time-barred.

Plaintiff's claims relating to the 1998 and 1999 graduation ceremonies cannot be sustained as timely under the continuing violation doctrine. This doctrine allows a plaintiff to pursue claims relating to conduct occurring outside the statute of limitations if the plaintiff can demonstrate that the conduct was part of an ongoing pattern or practice of Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 481 (3d Cir. 1997). However, as the plaintiff is undoubtedly aware, courts are generally wary of extending the continuing violation doctrine outside of the Title VII employment discrimination context. Herbert v. Reinstein, 976 F. Supp. 331, 337 (E.D. Pa. 1997), aff'd., 162 F.3d 1151 (3d Cir. 1998), cert. denied, 525 U.S. 1177 (1999); citing LRL Properties v. Portage Metro Housing Auth., 55 F.3d 1096, 1105 n. 3 (6th Cir. 1995); and McGregor v. Louisiana State Univ. Bd. of Supervisors, 3 F.3d 850, 866 (5th Cir. 1993). Accordingly, there is reason for doubt as to whether the doctrine applies here.

---

[2]    In Sabatini v. Reinstein, the plaintiff's claims relating to the 1999 graduation were dismissed on the basis that neither his nor Herbert's constitutional rights were violated. No. 99-2393, 2000 WL 1052103, at *1 (E.D. Pa. July 21, 2000). In addition, the plaintiff's Equal Protection claims relating to the 1998 graduation were dismissed on the basis that the Temple campus police did not violate his Fourteenth Amendment rights on that occasion. Id. at *2.

6

Furthermore, the continuing violation doctrine is "premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410, 1415 n. 6 (10th Cir. 1993). Therefore, the continuing violation doctrine will not overcome the statute of limitations if an event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation. Id.; see also West v. Phila. Electric Co., 45 F.3d 744, 755 n. 9 (3d Cir. 1995) (in evaluating the existence of a continuing violation, the court should consider "permanence--whether the nature of the violations should trigger the [victim's] awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate). The complaint in this case shows, on its face, that the incidents in question were of a permanent nature, such that the plaintiff either was aware or should have been aware of the need to take action to assert his rights at the time when the incidents occurred. Unlike the hostile environment employment discrimination cases in which the continuing violation doctrine is most often employed, e.g., West, supra; Martin, supra; Waltman v. International Paper Co., 875 F.2d 468 (1989). in this case no further pattern of conduct was necessary to alert the plaintiff to the need to file suit. Accordingly, the continuing violation doctrine cannot save the plaintiff's claims relating to the 1998 and 1999 incidents. Counts I through VIII of the complaint, containing the plaintiff's claims relating to those incidents, should therefore be dismissed as time-barred.

**III.    Conclusion**

   For the foregoing reasons, Defendants respectfully request the entry of an Order

dismissing Counts I, II, III, IV, V, VI, VII, VIII, IX, XIII, XVII, and XXI of the Complaint with

prejudice.[3]  A proposed Order has been filed in conjunction with this motion.


          Respectfully submitted,


Dated: May 8, 2002

          Burt Rublin, #32444
          Carrie Watt, #71119
          BALLARD SPAHR ANDREWS &
            INGERSOLL, LLP
          1735 Market St., 51st Floor
          Philadelphia, PA  19103
          215-665-8500
          Attorneys for Defendants

---

[3]  Many of the factual allegations which form the purported basis for the Plaintiff's
remaining claims are contained in these counts of the Complaint.  The dismissal of these
counts will therefore necessitate the filing of an amended complaint.  Defendants'
proposed Order provides plaintiff with twenty (20) days in which to file an amended
complaint.

## CERTIFICATE OF SERVICE

I hereby certify that on this date, May 8, 2002, I caused a true and correct copy of the foregoing Motion to Dismiss, together with supporting Brief and proposed Order, to be served by first class mail on the following:

Lincoln Herbert
83 South Lansdowne Ave., No C-7
Lansdowne, PA  19050

Carrie E. Watt, Esq.